## 39793. MOORE v. THE STATE.

BELL, Justice.

The appellant, Jack Moore, was convicted of the murder of his wife, Lorrie Moore, and was given a life sentence. He appeals.

Jack, Lorrie, and their two children lived in a mobile home. At approximately 4:00 p.m. on June 28, 1982, the Carroll County Sheriff's Department received a call from the appellant, who reported that his trailer had been burglarized and his wife injured. Chuck Lambert, a sheriff's investigator, and Steven Robertson, a GBI agent, answered the call and went to the appellant's trailer, where they found Lorrie dead on the bedroom floor. She had been shot three times with a .22 caliber firearm, once in the head, once in the shoulder, and once in the arm. During their investigation, the officers found no pry marks, broken glass, or any other indication of forced entry into the trailer.

On that day, the appellant told the officers that he had left the trailer at 7:35 a.m. to go to work, and that at about 3:30 p.m. he called Lorrie at work, but was told she had not reported in. She was scheduled to begin work at 1:30 p.m. He told the officers that he then called a neighbor to see if Lorrie's car was still at home, and that, because the neighbor told him that it was, he left work and went home, where he found his wife's body.

The next day, June 29, 1982, the appellant reported that three firearms had been taken during the alleged burglary: a .38 caliber revolver, a rifle, and a shotgun. A day later the appellant also reported that he had found pry marks on the front door.

On July 2, 1982, the appellant changed his story and gave a statement concerning the shooting of his wife. Agent Robertson testified that the appellant stated that he and Lorrie argued early on the morning of June 28, 1982; that Lorrie threatened to leave him and

take their two sons; that they went into the bedroom; that he told Lorrie she was not going to take the children; that she threatened to kill him if he tried to stop her; that Lorrie became angry and pulled a holstered .38 caliber revolver out of a dresser drawer; that he then pulled a .22 pistol out of a nightstand; that she turned towards him and dropped the holster and pistol, at which time he started to back towards the bedroom door, near which he was standing; that he told her not to pick up the gun, but that she did; that she then removed the revolver from the holster and pointed it at him; that he then fired once at her, causing her to stumble onto the bed; that while lying on the bed, Lorrie again raised the gun at him and that he shot her again, knocking her to the floor; and that he then threw the .22 pistol in the trash and put the .38 caliber revolver in a duffel bag in a storage closet.

The appellant further stated that after the shooting he left for work, unable to remember that he had shot Lorrie, but able to remember that they had argued. He stated that after he called Lorrie at work, and discovered she was not there, he called a neighbor to see if Lorrie's car was still home. The neighbor informed him that it was. The appellant stated that he then left work and went home. As to the rifle and shotgun which he had earlier reported missing, he stated that he had hidden the rifle and shotgun in the wall behind his dresser after hunting season and did not know why he had reported them missing. He stated that he took the trash to the dumpster on June 29 and that the .22 caliber pistol may well have been thrown away.

The officers testified that the .38 caliber revolver, the rifle, and the shotgun were found in the places identified by the appellant. Officer Lambert also testified that when he secured the crime scene a holster was found on the floor by Lorrie's body. Although the holster and the .38 caliber revolver were examined for prints, no identifiable prints were found on either.

At trial, the appellant testified to basically the same version of the shooting that he gave in his July 2 statement. He maintained that Lorrie was qualified to handle a gun, and that he shot her in self-defense. However, on cross-examination he testified that it was not an accident that he shot Lorrie; that he was not mad when he shot her; that he had intentionally pointed the gun at her after she pointed the .38 revolver at him; and that he did not act out of a sudden, irresistible passion when he pulled the trigger.

One Rita Degaris, a dental assistant, testified that she called Lorrie five times on the morning of June 28, 1982 between 8:05 and 8:45 a.m. to set up a dental appointment, but received no answer. Eldred Perry, a friend of the appellant, testified that on June 28, at about 7:30 a.m., he saw Moore driving on a local road. Perry said that

he did not usually see Moore in that area, and that a trash dumpster was located nearby. Lurlie Colson, who baby-sat the two Moore children during the day, testified that the appellant usually delivered the children to her promptly at 7:30 a.m., but that on the morning of June 28 he was a little late.

1). In his third enumeration of error, the appellant argues that the trial court erred in failing to grant his motion for a directed verdict. However, after examining the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could reasonably have found the essential elements of the crime, including malice or intent, beyond a reasonable doubt. *Lee v. State,* 247 Ga. 411 (6) (276 SE2d 590) (1981); *Strickland v. State,* 250 Ga. 624 (1) (300 SE2d 156) (1983).

2). In his first enumeration of error, the appellant argues that the trial court erred in denying him his right to a thorough and sifting cross-examination of two state's witnesses.

a). First, the appellant argues that the court erroneously curtailed the following questions concerning malice aforethought, which were addressed to Officer Lambert: 1). "Q. And as of September 1st, 1982, you had not found any concrete evidence that Edward Moore planned or anticipated this shooting prior to the morning of June 26th [sic], 1982?" (objection sustained), and 2). "Q. What, if any, hard evidence you can [sic] point to, sir, that showed that he intended to do this prior to. . ." (Court curtailed questioning sua sponte.)

The scope of cross-examination is not unlimited, but rests largely within the discretion of the trial court, and its discretion will not be disturbed on appeal unless it has been abused. *Casey v. State,* 249 Ga. 724 (3) (293 SE2d 321) (1982); *Jackson v. State,* 237 Ga. 663 (229 SE2d 345) (1976).

Prior to asking the above questions, the defense counsel had asked Officer Lambert if he had found anything inconsistent with the appellant's July 2 statement; if he had any hard evidence against the appellant before the appellant gave his statement; if he had discovered the murder weapon; if he had discovered any eye-witnesses; again, after reviewing the content of the statement, if he had discovered any hard evidence inconsistent with the statement; if his investigation had revealed that Lorrie knew how to handle a gun; and if his investigation had revealed that Moore did not have a criminal record and did not have a propensity towards violence. Officer Lambert answered all of the above questions favorably to the defense.

These prior questions, which led to the questions the appellant complains were improperly curtailed, support the conclusion that the

latter questions were argumentative and were merely cumulative of the prior questions. For these reasons, we find that the trial court did not abuse its discretion in limiting the questioning of Officer Lambert.

Additionally, because a review of the record shows that the appellant was allowed a thorough and sifting cross-examination of Officer Lambert, and because the questions which were disallowed were later posed to and answered by Agent Robertson, the appellant was not harmed by the court's ruling. See, *Deberry v. State,* 241 Ga. 204 (3) (243 SE2d 864) (1978).

b). The appellant next argues that the trial court erroneously denied him his right to cross-examination by sustaining the state's objection to the following question, which was addressed to Agent Robertson: "Q. Do you recall telling me that his basic problem was that he failed to remember or forget or whatever and that he had a good case of self-defense?"

We find that the trial court did not abuse its discretion in sustaining the state's objection. The question asked the witness to reiterate an out-of-court observation he might have made concerning his personal evaluation of the merits of the appellant's defense, which was an ultimate issue in the case and a matter which could only be determined by the jury. *Proctor v. State,* 235 Ga. 720, 725 (221 SE2d 556) (1975).

3). In his second enumeration of error, the appellant argues that the trial court erred in refusing to give his requested charge on lawful act — unlawful manner — involuntary manslaughter. OCGA § 16-5-3 (b) (Code Ann. § 26-1103). We disagree. It is not error to refuse to give a requested charge on misdemeanor grade involuntary manslaughter where the defendant asserts that he or she caused the death of another by the use of a gun in self-defense. *Crawford v. State,* 245 Ga. 89 (3) (263 SE2d 131) (1980); *Farmer v. State,* 246 Ga. 253 (2) (271 SE2d 166) (1980); *Williams v. State,* 249 Ga. 6 (4) (287 SE2d 31) (1982); *Green v. State,* 249 Ga. 369 (4) (290 SE2d 466) (1982); *Strickland v. State,* supra, 250 Ga. 624 at (4). The appellant asks us to reconsider and depart from these holdings; however, we decline to do so. Accordingly, this enumeration of error is without merit.

4). In his final enumeration of error, the appellant argues that the trial court erroneously admitted over his objections state's exhibits #7 and #8, which are photographs of the victim. The victim was found in a half kneeling, half lying position, face down on the bedroom floor. State's exhibit #8 shows a frontal view of the victim and was taken after she had been rolled over. At trial the appellant objected to this photograph on the ground that it did not accurately depict the victim as she was found. State's exhibit #7 shows the

victim as she was found. The appellant objected to it on the ground that it was repetitious. On appeal, in addition to raising the same objections he did at trial, the appellant argues that the photographs should not have been admitted because they are gruesome and highly inflammatory.

We find that the trial court did not err in admitting these photographs, first, because neither is particularly gruesome or inflammatory, and, second, because state's exhibit # 8 was relevant to identify the victim, to show the blood on the front of her nightgown, and to show that her arms had been raised in a defensive posture when she was shot. *Strickland v. State,* supra, p. 626; *Stevens v. State,* 242 Ga. 34 (3) (247 SE2d 838) (1978); *Moses v. State,* 245 Ga. 180 (6) (263 SE2d 916) (1980).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 27, 1983.

Tisinger, Tisinger, Vance & Greer, Thomas E. Greer, for appellant.

Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Assistant District Attorney, Michael J. Bowers, Attorney General, William B. Hill, Jr., Senior Assistant Attorney General, for appellee.