41917. HOLCOMB v. THE STATE.
(326 SE2d 760)

MARSHALL, Presiding Justice.

The appellant, Earl Lee Holcomb, was convicted of the murder of George Frank Sexton and sentenced to life imprisonment.[1]

The evidence shows that the appellant was a habitual user of cocaine and amphetamines, which he took by injection into his body. He was supplied the drugs by the victim, Sexton, who was arrested on narcotics charges in March of 1984. John Allan Beard, who testified at the appellant's trial under a grant of immunity, then began to obtain the drugs for the appellant from Charles Millwood. Sexton was released from jail in the spring of 1984, and Millwood informed Beard that he wanted Sexton murdered. Beard informed the appellant of this, and the two of them decided to pass the appellant off as a professional hit man and "con dope" from Millwood in exchange for their agreement to murder Sexton.

Millwood supplied the appellant and Beard with two weapons: a Ruger Ten, Twenty-Two rifle equipped with a scope; and a thirty-aught-six weapon. The appellant and Beard approached Sexton several times, both at his home and elsewhere, but they were either unable or unwilling to commit the murder. However, on Monday, May 14,

---

[1] The jury returned its verdict of guilty on August 23, 1984. A motion for new trial was filed on August 27, 1984, and denied on November 30, 1984. The notice of appeal was filed on December 6, 1984, and the case was docketed in this court on January 10, 1985. However, the transcript of the hearing on the challenge to the composition of the grand jury was inadvertently omitted from the original transcript, and it was added to the record through a supplemental transcript, which was filed on January 31, 1985. After briefing, the case was submitted for decision without oral argument on February 22, 1985.

1984, the appellant was, as Beard phrased it, "strung out bad." In the early morning hours of May 15, the appellant attempted to obtain drugs from Beard, but he was unsuccessful. At approximately 3:00 p.m. on May 15, the appellant telephoned his wife and asked her to meet him at the Knotts Bridge, where his truck was in need of assistance. Later that day, the appellant visited Beard at his trailer and informed him that he had shot Sexton.

Sexton's wife testified at trial that her husband was alive at approximately 7:15 a.m. on May 15 when she left for work. However, later that morning, his corpse was discovered outside of his house. The victim had sustained four gunshot wounds to the posterior surface of the back and another gunshot wound to the back of the head. Corresponding exit wounds associated with each of the back entry wounds were discovered, but there was no exit wound from the entry wound to the head. A .22-calibre projectile was recovered from the left cerebral hemisphere of the skull. Five .22-calibre shells were discovered approximately 25 feet from the body.

The appellant was arrested on May 19, 1984. Discovered at his residence was an instructional manual for the Twenty-Two rifle, as well as a notebook containing a diagram depicting a good likeness of the land around Sexton's home and property. In addition, a spent .22-calibre shell was found on his driveway. A forensics expert for the state testified that the cartridge casings recovered from the scene and the one recovered at the appellant's driveway, as well as the projectile recovered from the victim, had all been fired from the same weapon.

On May 21, two days after his arrest, the appellant was interviewed at the Pickens County jail by two law enforcement officers, Rymer and Cagle. Rymer testified at trial that the appellant was advised of his *Miranda* warnings at the beginning of the interview. Rymer further testified that the appellant was not interviewed on the day of his arrest, because he was incoherent and appeared to be under the influence of some type of drug; however, at the time of the interview two days later, he appeared wholly rational and coherent. After being advised of his *Miranda* warnings at this interview, the appellant gave a taped statement, which was admitted in evidence after the trial court conducted a *Jackson v. Denno* hearing and determined that the statement was freely and voluntarily given. In this statement, the appellant admitted that he went to Sexton's home with the rifle between 8:00 a.m. and 9:00 a.m. on May 15, that he observed Sexton's wife leave, and that he was on drugs and eating "speed" at the time. He further stated, ". . . in my mind there is some blank time and I'm scared as hell I did shoot Frank . . . Whether I remember it or not I must have shot the man. I was there. I must have. Oh, God, yes, I must have." Finally, the appellant stated that he threw the murder weapon off the Knotts Bridge after he left the Sexton property. The

weapon was never recovered.

The appellant testified that his last drug injection occurred the day before his arrest. A psychiatrist, appearing as a medical expert for the defense, testified that a drug abuser such as the appellant will take from four days, at a minimum, to sixty days, at a maximum, to overcome the effects of drug withdrawal. This psychiatrist concluded that at the time of the interview the appellant was experiencing the effects of drug withdrawal, and that, although he was partially capable of understanding and knowing his rights, he did not have the mental capacity to act in his own best interests to defend his rights. However, the psychiatrist could not point to any irrational comments in the appellant's statement, and the psychiatrist admitted that the statement did not contain indicia of any form of delusion, hallucination, or paranoia.

The appellant testified at trial that he had gone to Sexton's property in order to find a large amount of cocaine reputedly buried there, and that he did not go there to shoot Sexton and did not murder him. The appellant insisted that a professional hit man hired by Millwood had murdered Sexton and that he, the appellant, had been set up.

In this appeal, the appellant enumerates three alleged errors: (1) The trial court erred in ruling that the appellant freely and voluntarily waived his *Miranda* rights before making the statement to police. (2) The trial court erred in failing to grant his challenge to the composition of the grand jury. (3) The evidence is insufficient to support the verdict.

1. After listening to the appellant's taped statement, as well as the testimony given at the *Jackson v. Denno* hearing, the trial court concluded that the appellant was properly advised of his *Miranda* warnings prior to making the statement and that there was no indication that he was disoriented or unable to comprehend what the police officers were saying. Thus, the trial court found that the statement was freely and voluntarily given, and was therefore admissible.

Factual determinations such as this will be upheld by the appellate court unless such findings are clearly erroneous. E.g., *Powell v. State*, 252 Ga. 297 (2) (313 SE2d 90) (1984) and cits.; *Strickland v. State*, 250 Ga. 624 (2) (300 SE2d 156) (1983) and cits. We cannot say that the trial court's ruling in favor of admissibility was erroneous here. As was said in *Fields v. State*, 232 Ga. 723, 724 (208 SE2d 822) (1974), " 'The fact that appellant may have been a drug addict and undergoing withdrawal symptoms at the time of his confession would not, standing alone, compel a finding that his confession was involuntarily made.' *Robinson v. State*, 3 Md. App. 666, 673 (240 A2d 638). The totality of the circumstances surrounding such confession must be viewed in order to determine its admissibility into evidence. The evidence here showed that the defendant was advised of his constitu-

tional rights, that while he was showing some withdrawal symptoms he was not in bad shape and the confession was not the result of any promises nor because of the fear of threats. Under these circumstances the trial court did not err in failing to exclude this confession from evidence." Accord *Powell v. State*, supra; *Strickland v. State*, supra; *Durden v. State*, 250 Ga. 325 (2) (297 SE2d 237) (1982).

2. The appellant's challenge to the composition of the grand jury is based on an asserted underrepresentation of young people, i.e., people from the ages of 18 to 29. However, we have consistently held that young people do not constitute a distinct and identifiable class for the purpose of a jury challenge. E.g., *Hunter v. State*, 252 Ga. 425, 426 (314 SE2d 102) (1984) and cit.; *Cox v. State*, 248 Ga. 713 (2) (285 SE2d 687) (1982) and cit. But see *Willis v. Zant*, 720 F2d 1212 (11th Cir. 1983) (holding that a habeas petitioner was entitled to an evidentiary hearing on the question of whether young adults constituted such a distinct group that their systematic exclusion from the jury venire violated the Sixth Amendment's fair cross-section requirement). Here, the trial court did allow the appellant an evidentiary hearing. Nothing adduced at that hearing causes us to depart from the holdings in our previously cited decisions. We thus conclude that the trial court did not err in failing to sustain this grand-jury challenge.

3. The evidence presented at trial was sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) to support the verdict.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 1985.

*Bobby Lee Cook, Jr.*, for appellant.
*Rafe Banks III, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.*, for appellee.