42427. MULLINAX v. THE STATE.
(339 SE2d 704)

BELL, Justice.

The appellant, Jack Mullinax, was convicted of the murder of Charles Fincher, carrying a concealed weapon, and carrying a pistol without a license.[1]

The victim worked as a bartender at the Silver Ribbon Lounge on Stewart Avenue. On Saturday, December 24, 1983, Mullinax twice visited the Silver Ribbon. The first visit was around 11:30 a.m. Charles Hinson, a customer of the Silver Ribbon, testified that he played pool with Mullinax, giving him a handicap. Hinson testified that after several games, he decided Mullinax was too good a player to have a handicap. Mullinax, however, would not play without one and began looking for someone else to play with. Mullinax "got loud," and Fincher asked him to quiet down or leave. Mullinax left. There were no curse words, blows, or threats exchanged between the victim and Mullinax.

Mullinax gave a different account of his first visit to the Lounge. He testified that he played pool with Fincher, who was giving him a

---

[1] The offenses occurred on December 24, 1983. Mullinax was indicted on January 17, 1984, by a Fulton County grand jury. Mullinax was found guilty and sentenced on July 11, 1984. He received a life sentence for murder, and one twelve-month sentence for the misdemeanor convictions, to run concurrent with the life sentence. Mullinax moved for a new trial on August 10, 1984, which was denied on April 12, 1985. The transcript was certified by the court reporter on September 28, 1984, and the record was certified on June 4, 1985. The case was docketed in this court on June 12, 1985, and orally argued on September 10, 1985.

handicap. He said that after he won several straight games, Fincher got mad and cursed and threatened him. Mullinax said he then left the Lounge.

Mullinax returned to the Silver Ribbon around 4:00 p.m. According to Mullinax's testimony at trial, as he was exiting the lounge following that second visit, Fincher blocked his path, struck him in the face, shouted threats and abusive words at him, and reached for his back pocket like he was going for a gun. At that point Mullinax shot Fincher.

Thomas Clark, the owner of the Lounge, disagreed with Mullinax's version of events. Clark testified that he was standing with Fincher at the front door as Mullinax approached them. According to Clark, as Mullinax got even with them, he pulled a gun from beneath his coat without warning and began firing. Clark grabbed Mullinax and held him until the police arrived. Mullinax told him to "[g]o ahead and shoot me, I'll spend the rest of my life in prison."

Fincher had been struck by two bullets and died at the scene. Several hours after the murder, police detectives obtained a written statement from Mullinax. The trial court admitted this statement into evidence after a *Jackson v. Denno* hearing. Mullinax's statement was similar to his testimony with regard to his confrontations with Fincher. According to the statement, Fincher got mad because Mullinax was winning at pool, and Mullinax shot Fincher to prevent the victim from "whipping" him.

1. In his first enumeration of error Mullinax contends that the evidence is not sufficient to support the murder conviction. We disagree, since after viewing the evidence in a light most favorable to the jury's verdict, we find that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his second enumeration of error Mullinax contends that the trial court erred in admitting his statement into evidence. Mullinax claims the statement was involuntary and was obtained in violation of his *Miranda* rights. He asserts that his intoxication, as well as his fifth grade education, rendered him incapable of making a knowing and intelligent waiver of his constitutional rights. He further contends that the statement was involuntary because it was induced by the promise to take him to the hospital only once the statement was completed.

At the *Jackson v. Denno* hearing, James Grimes, a police officer for the City of Atlanta, testified that he interviewed Mullinax at about 7:00 p.m. on the evening of December 24. Grimes testified that he advised Mullinax of his *Miranda* rights and read him a waiver of rights form. According to Grimes, Mullinax stated that he understood his *Miranda* rights and was willing to make a statement. Mullinax

then signed the waiver of rights form, and proceeded to give his statement, which was typed by a secretary. According to Grimes, Mullinax was asked to read the statement, and he did so and then signed each of the four pages.

Grimes testified that he could smell alcohol on Mullinax's breath, but that he did not appear to be under the influence of alcohol. Moreover, according to Grimes, he made no threats or promises to Mullinax to induce him to make the statement.

Mullinax testified that he told Grimes that his hand was hurting him because Clark stepped on it and that he wanted to go to the hospital, but that Grimes told him he could not go until the police were through with him. Mullinax added that he had had about 15 drinks of whiskey that day, and that he did not remember what he told the police or whether his rights had been explained to him.

At the *Jackson v. Denno* hearing, the district attorney asked Mullinax to read his statement. Mullinax did so with no assistance, and was then questioned about it by the district attorney.

On appeal a trial court's findings as to factual determinations and credibility relating to the admissibility of a statement will be upheld unless clearly erroneous. *Strickland v. State*, 250 Ga. 624 (2) (300 SE2d 156) (1983); *Gates v. State*, 244 Ga. 587 (1) (261 SE2d 349) (1979). Based on the evidence presented at the *Jackson v. Denno* hearing, we find that the trial court was authorized to conclude that neither the defendant's limited education, nor his intoxication rendered him incapable of making a knowing and intelligent waiver of his constitutional rights. See *Strickland*, supra, 250 Ga. at 616; *Gates*, supra, 244 Ga. at 590. Similarly, we conclude that the trial court was authorized to reject Mullinax's allegation that the police promised to provide medical treatment only upon completion of the statement, as Officer Grimes testified that he had not threatened or promised Mullinax anything to induce him to make a statement, and that, even if such a promise had been made, it did not induce Mullinax to give his statement. See OCGA § 24-3-50.

3. In his third enumeration of error, Mullinax argues that the trial court erred in ordering two psychiatric institutions which had treated him to answer a state subpoena requiring the production of documents pertaining to his mental health.

We conclude, however, that Mullinax has not demonstrated any harm resulting from this ruling. The evidence obtained pursuant to the subpoena was only relevant to Mullinax's general and special pleas of insanity, which were filed before trial. Mullinax waived his special plea of insanity before trial, and presented no psychiatric evidence concerning his general plea of insanity. Accordingly, the subpoenaed records were not used as evidence. Under these circumstances, we find that no harm resulted to Mullinax from the ruling

now complained of.

4. During the trial court's charge on voluntary manslaughter, the court charged that "[i]t is a question for the jury to determine whether the specific facts of a case before them meet the standard set by law. It is for them to say whether the *slayer* acted from passion or revenge." (Emphasis supplied.)

In his fourth enumeration of error Mullinax contends that the court's use of the word "slayer" amounted to an improper expression of opinion that the defendant committed the offense of murder, see OCGA § 17-8-57,[2] specifically that he acted with malice aforethought. He apparently bases this argument on his belief that the word "slayer" carries a connotation of malice. However, assuming without deciding that the word "slayer" carries such a connotation when considered in isolation, we find that its use by the court in the context of this case did not constitute an opinion that Mullinax acted with malice.

In order to determine whether a trial court has improperly expressed an opinion in its charge as to what has or has not been proved, the whole charge may be considered. *Mitchell v. State*, 190 Ga. 571 (3) (9 SE2d 892) (1940); *Buffington v. State*, 171 Ga. App. 919 (8) (321 SE2d 418) (1984). OCGA § 17-8-57 is only violated when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. *Mitchell v. State*, supra, 190 Ga. at 572; *Buffington v. State*, supra, 171 Ga. App. at 923.

Reviewing the charge as a whole in the present case, we conclude that the trial court did not intimate an opinion that the evidence showed Mullinax acted with malice. The portion of the charge in question followed a charge that "a person" commits voluntary manslaughter when the person causes the death of another human being while acting as a result of a sudden, violent, and irresistible passion. The term "slayer," fairly construed, did not refer to the defendant, but back to the abstract "person," thus instructing the jury as to what circumstances would, if this "person" had caused another's death, justify a finding of voluntary manslaughter. We therefore conclude that the trial court did not improperly express an opinion that Mullinax acted with malice. See generally *Wright v. State*, 255 Ga. 109 (6) (335 SE2d 857) (1985).

*Judgment affirmed. All the Justices concur.*

---

[2] OCGA § 17-8-55 provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give."

*Susan L. Frank,* for appellant.

*Lewis R. Slaton, District Attorney, Richard E. Hicks, Russell J. Parker, Assistant District Attorneys, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.