306 Ga. 240
FINAL COPY

S19A0116.  FLEMING v. THE STATE.

MELTON, Chief Justice.

Charles Fleming was tried and convicted of murder and related offenses in connection with the crimes he committed against Lamonte Corbin and Tracy Skrine.[1]  Fleming appeals, alleging that the evidence was insufficient to support his convictions, that the trial court erred by improperly admitting certain evidence at trial,

---

[1] On October 6, 2016, a DeKalb County grand jury indicted Fleming for the following crimes committed against Corbin and Skrine: malice murder of Corbin (Count 1), felony murder of Corbin predicated on aggravated assault (Count 2), felony murder of Corbin predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault of Corbin (Count 4), aggravated assault of Skrine (Count 5), and possession of a firearm by a convicted felon (Count 6).  Following a jury trial that took place on October 17-21, 2016, Fleming was found guilty of all charges, except malice murder.  The trial court sentenced Fleming to serve life without parole for felony murder (Count 2), twenty years consecutive for the aggravated assault of Skrine (Count 5), and five years concurrent for possession of a firearm by a convicted felon (Count 6).  The court merged the aggravated assault of Corbin (Count 4) into the felony murder conviction (Count 2) and vacated the remaining felony murder charge (Count 3).

Fleming timely filed a motion for new trial on December 19, 2016, which he subsequently amended through new counsel on August 30, 2017.  After a hearing, the trial court denied the motion as amended on February 9, 2018.  Fleming timely filed a notice of appeal to this Court.  The case was docketed in this Court for the term beginning in December 2018 and was submitted for a decision on the briefs.

and that he received ineffective assistance of counsel.  Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial established that, at all relevant times, Skrine lived in a house in DeKalb County known to be a "hangout spot" from which Skrine sold drugs.  Skrine and Fleming were longtime friends, and, in April 2015, Skrine introduced Fleming to Corbin and Howard Archer.

On April 25, 2015, Archer was at Skrine's house along with Desmond Snider, Lamonte Collins, and Ivy Hampton.  Fleming stopped by around 3:00 p.m. and asked if anyone had information regarding who had shot and killed his brother.[2]  The men denied having any knowledge about the shooting.  Fleming left the house, but returned a few hours later with three unknown men. Hampton later told officers that Skrine and Fleming had argued earlier in the day, and that Fleming told Skrine "he was coming back."  Skrine

---

[2] Fleming's brother, Bernard Collins, had been robbed and shot approximately one month prior.

told officers he believed that Fleming had brought the three unknown men to the house because Fleming thought Skrine and Corbin were withholding information regarding who shot Fleming's brother. Archer, who was sitting in his car at this time, saw Fleming and the unknown men make hand signals and perform handshakes associated with the Bloods street gang. Archer further testified that, on a prior occasion, Fleming had self-identified as a member of the Bloods.

Fleming approached Archer and asked if he had a gun, to which Archer replied, "no." When Hampton told the group of men that Skrine was not at home, Fleming decided to remain outside by the carport while his companions went inside the house.

Skrine returned home later with his girlfriend, Brittni Chatman, and Corbin. The three walked through the carport and into the house. Archer also went inside. There, he saw Skrine counting money while in the living room with the three unknown men who had arrived with Fleming. At this time, one of the men flashed a gun at Archer, leading him to believe that a drug deal was

underway.  Then Fleming came inside the house, gave the unknown men a "look," and walked back out to the car.  Soon after, the men approached Corbin and Skrine, brandished their guns, and began shooting.  Then they fled the house, got into a running car where Fleming was waiting, and drove away.

After the shooting, Snider, Archer, and Chatman found Corbin lying unresponsive on the floor of the kitchen.  Skrine was hiding in his bedroom and had suffered a gunshot wound to his left buttock.  Archer and Chatman called the police, but Corbin had died by the time they arrived.  Officers found a $1 bill and a small bag with a white powdery substance in Corbin's right hand.  The medical examiner concluded that Corbin sustained three gunshot wounds, with the one to his chest being the cause of death.

During their investigation of the crime scene, officers located one unfired 9mm round and two 9mm cartridge casings on the dining room floor, one 9mm cartridge casing on the kitchen floor by

the entrance to the house, and two ".380-caliber"[3] cartridge casings on the living room floor. The medical examiner also located a ".380-caliber" bullet in Corbin's body during the autopsy. Based upon the ballistics evidence found at the scene and during the autopsy, a GBI firearms examiner concluded that between three and five firearms were involved in the shooting. Chatman and Skrine later identified Fleming in a photographic line-up, and Archer, Snider, and Hampton all made in-court identifications of Fleming at trial. In addition to presenting testimony that Fleming was seen making gang signs on the night of the shooting, and that he had previously self-identified as a member of the Bloods, the State called a gang expert at trial to testify about additional evidence of Fleming's gang affiliation. This expert opined that Fleming was a high-ranking Bloods member who had the authority to order a retaliatory and violent attack on a person who had wronged the gang or one of its members. The State also presented evidence pursuant to OCGA §

---

[3] It is unclear whether the witnesses were referring to a .38-caliber or a .380 bullet and cartridge.

24-4-404 (b) ("Rule 404 (b)") of a retaliatory gang attack orchestrated by Fleming that occurred at the DeKalb County jail prior to trial. Finally, the parties stipulated to Fleming's status as a convicted felon in relation to the charge of possession of a firearm by a convicted felon.

Contrary to Fleming's assertion, the evidence presented at trial was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). See also OCGA § 16-2-20 (party to a crime); *Parks v. State*, 272 Ga. 353, 354-355 (529 SE2d 127) (2000).

2. Next, Fleming argues that the trial court erred by failing to sua sponte rebuke the prosecutor under OCGA § 17-8-75,[4] and for failing to sua sponte declare a mistrial after the State raised matters in closing argument that had not been placed into evidence during trial. The District Attorney concedes that the prosecutor's actions during closing argument were improper, but argues that the error was harmless. We agree with the District Attorney.

The record reflects that, during the State's direct examination of the medical examiner, the State presented photographs of Corbin's body, which included a picture of a tattoo on his chest that said "M-O-B." Later in the trial, the State called a gang expert to provide testimony regarding the Bloods street gang as well as Fleming's gang affiliation. During cross-examination of the expert

---

[4] OCGA § 17-8-75 provides:
> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

witness, defense counsel asked if "M-O-B" was short for "Member of Blood[s]," to which the expert replied, "yes." This was contrary to testimony from Archer that Corbin was not a member of the Bloods. Defense counsel then asked if Fleming had an "M-O-B" tattoo, to which the expert replied "no, sir, not that I recall." Later, on re-cross examination, defense counsel elicited testimony that fellow gang members cannot be violent toward one another without orders from a higher-ranking gang member.

Relying upon the gang expert's testimony and the picture of Corbin's M-O-B tattoo, defense counsel argued during closing that the jury could infer that Fleming could not have been responsible for Corbin's death because Fleming and Corbin were both members of the Bloods. In response, the prosecutor reminded the jury that the State had elicited testimony from Archer that Corbin was not a Bloods member and further argued that defense counsel had "mischaracterized . . . that M-O-B means member of blood[s]." Defense counsel objected, arguing that the prosecutor had misstated the evidence. The trial court instructed the jury to "recall what the

evidence was and base your verdict on your recollection and not on what counsel says it was." The prosecutor then took out a cell phone, played a portion of Tupac Shakur's song, "M.O.B.," and argued that "M-O-B" actually stands for "money over b**ches," not "member of blood[s]." Once again, defense counsel objected, and argued that the prosecutor was trying to present new evidence. The trial court sustained the objection and the prosecutor moved on. Later, during its charge of the jury, the trial court instructed the jury that closing arguments were not to be considered as evidence.

While the prosecutor improperly extended closing argument into matters not in evidence when she played a portion of Tupac Shakur's song for the jury, see *Walker v. State*, 281 Ga. 521 (5) (640 SE2d 274) (2007), defense counsel's objection to the argument was *sustained*, and "[w]here the objection to the prejudicial matter is sustained . . . the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant." (Citation omitted.) *Mullins v. State*, 269 Ga. 157, 158 (496 SE2d 252) (1998). Here, defense counsel made no such request.

Even if we were to assume that the trial court erred in not rebuking the prosecutor under OCGA § 17-8-75, any such error was harmless. *Arrington v. State*, 286 Ga. 335 (15) (a) (687 SE2d 438) (2009) (trial court's failing to fulfill its duty under OCGA § 17-8-75 is subject to harmless error analysis). In light of the substantial evidence against Fleming, defense counsel's prompt objections, and the trial court's instructions, it is highly probable that neither the prosecutor's argument nor any alleged failure of the trial court to rebuke the prosecutor contributed to the verdict. See *Anderson v. State*, 302 Ga. 74 (6) (805 SE2d 47) (2017).[5] For these same reasons, we conclude that the trial court did not deprive Fleming of a fair trial by not declaring a mistrial sua sponte. See *Dolphy v. State*, 288 Ga. 705 (2) (a), (b) (707 SE2d 56) (2011).

3. Prior to trial, the State filed notices of intent to introduce evidence of Fleming's gang affiliation, including testimony from a

---

[5] Fleming also asserts that the prosecutor's statements violated his rights to confrontation and due process. However, because Fleming asserts these claims for the first time on appeal, they are not properly preserved for review.

gang expert, photographs of Fleming's tattoos, testimony from Archer that he witnessed Fleming and the unknown men making gang signs and wearing red scarves on the night of the shooting, and recordings of Fleming's phone calls from jail wherein he referred to himself and others as members of the Bloods. The notices also sought to introduce an incident at the DeKalb County jail wherein Fleming orchestrated a gang attack against another inmate as other acts evidence pursuant to Rule 404 (b). [6] After a hearing, the trial court admitted both the gang affiliation evidence and the Rule 404 (b) evidence at trial. Fleming contends that both rulings were error. We will review each claim in turn.

(a) *Gang Affiliation Evidence*

---

[6] The notices were filed under the original indictment in this case, as was the trial court's order allowing the admission of the evidence. Neither is part of the record before the Court; however, the transcript from the hearing on the State's notices was transmitted to this Court. There, the State asked that the evidence regarding gang affiliation be introduced as relevant intrinsic evidence, and the jail incident be admitted for the purposes of showing intent, plan, modus operandi, and opportunity pursuant to Rule 404 (b). At trial, the judge charged the jury that it was allowed to consider the Rule 404 (b) evidence only for the purposes of showing intent and knowledge.

Fleming alleges that the trial court erred in admitting evidence of his alleged gang affiliation because there was no evidence that the crime in the instant case was gang-related, and because the evidence of gang membership was highly prejudicial to him. However, because the evidence regarding Fleming's gang affiliation was intrinsic to the crimes charged, the trial court did not err in admitting the same.

As we explained in *Williams v. State*, 302 Ga. 474 (807 SE2d 350) (2017),

> [e]vidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Intrinsic evidence must also satisfy [OCGA § 24-4-403 "Rule 403"].
>    In applying these factors, the Eleventh Circuit has noted that evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citations and punctuation omitted.) Id. at 485-486. See also *United States v. Mills*, 704 F2d 1553 (IV) (11th Cir. 1983) (Intrinsic evidence of defendant's affiliation with the Aryan Brotherhood was relevant and admissible where "it pertained to a chain of events forming the context, motive, and set-up of the crime.").

Finally, it is within the trial court's sound discretion to determine whether to admit such evidence. *Davis v. State*, 301 Ga. 397 (2) (801 SE2d 897) (2017).

Here, the State sought to introduce evidence of Fleming's gang affiliation in order to establish a connection between Fleming and the shooters and to provide context for his participation in the crimes at issue. The record shows that Fleming initially arrived at Skrine's house seeking answers regarding who had shot his brother; that Fleming and the unknown men arrived at and departed from the scene together; that Fleming was a high-ranking member of the Bloods with the authority to order a retaliatory attack on a person who had wronged the gang or its members; that the unknown men were making gang signs prior to the shooting; that the unknown

men were wearing gang colors; that Fleming had previously self-identified as a member of the Bloods; and that, immediately prior to the shooting, Fleming gave the unknown men a "look." Indeed, the testimony concerning Fleming's gang affiliation completed the story of the crimes as it enabled the State to explain Fleming's authority within the gang, his association with the shooters, and his role in the crimes. This evidence was also inextricably intertwined with the charged offenses as the record shows that the shooting was a retaliatory attack orchestrated by Fleming, a high-ranking gang member. Lastly, "although the evidence may have incidentally placed [Fleming's] character at issue, its probative value was not substantially outweighed by the danger of unfair prejudice under these circumstances." _Williams_, 302 Ga. at 487. Therefore, the trial court did not abuse its discretion in admitting the gang affiliation evidence at trial. See _Davis_, 301 Ga. at 400 (2).

(b) *Other Acts Evidence*

Fleming also alleges that the trial court erred in admitting a surveillance video from the DeKalb County jail that showed Fleming

orchestrating a retaliatory and violent attack on another inmate, along with related expert testimony. Specifically, the evidence at trial showed that, on March 19, 2016, while awaiting trial at the DeKalb County jail, Fleming entered a pod where another inmate, who was accused of murdering a member of the Bloods, was in protective custody. Other lower-ranking Bloods members were also in the pod. There, Fleming communicated with the three lower-ranking gang members via hand gestures and signals. As soon as Fleming left the area, the three lower-ranking gang members carried out a violent assault on the inmate in protective custody. Fleming contends that the State failed to establish that this evidence was admissible to show his intent and knowledge in the charged crimes. We disagree.[7]

It is well established that other acts evidence is admissible where

---

[7] Under the circumstances of this case, we need not examine whether this evidence was also admissible on the issue of knowledge because we conclude that it was admissible as to intent. See *Kirby v. State*, 304 Ga. 472, 487 n.12 (819 SE2d 468) (2018).

(1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act. . . . On appeal, a trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion.

(Citations omitted.) *Brannon v. State*, 298 Ga. 601, 606 (783 SE2d 642) (2016). Fleming does not dispute that the State satisfied the third part of the Rule 404 (b) test; accordingly, we will only examine the first two prongs.

Relevance "is a binary question — evidence is either relevant or it is not." *Kirby v. State*, 304 Ga. 472, 480 (819 SE2d 468) (2018). In order to determine whether the evidence offered is relevant pursuant to OCGA § 24-4-401, the evidence must "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. "And because a plea of not guilty puts the prosecution to its burden of proving every element of the crime — including intent — evidence of other acts that tends to

make the requisite intent more or less probable to any extent is relevant." *Olds v. State*, 299 Ga. 65, 75 (786 SE2d 633) (2016). Simply put, the evidence must be for a purpose other than to show a defendant's general propensity toward violence. See, e.g., *Parks v. State*, 300 Ga. 303 (2) (794 SE2d 623) (2016).

Fleming was charged with felony murder predicated on aggravated assault, and two separate counts of aggravated assault for each victim. For the felony murder charge, the State was required to prove that Fleming caused Corbin's death while in the commission of an aggravated assault. See OCGA § 16-5-1 (c). Both of the aggravated assault charges, as well as the underlying aggravated assault for the felony murder charge, required proof that Fleming had the general intent to assault Corbin and Skrine. See OCGA § 16-5-21 (a) (2). Importantly, because Fleming was not the shooter, the State needed to prove that he acted as a party to a crime, see OCGA § 16-2-20 (defining party to a crime), meaning that he shared a common criminal intent with the direct perpetrators, see *Butts v. State*, 297 Ga. 766 (2) (778 SE2d 205) (2015) (a jury may

infer parties' common criminal intent based on their presence, companionship, and conduct with each other before, during, and after the crimes).

Fleming's conduct during the jail incident involved the same intent to assault that the State had to prove in the present case for both the aggravated assault charges and the felony murder charge predicated on aggravated assault. *Kirby*, 304 Ga. at 480-481 ("Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." (Citation and punctuation omitted.)). Accordingly, the jail incident was relevant to show Fleming's intent.

The second prong of our Rule 404 (b) analysis requires us to weigh the probative value of the other acts evidence against the danger of unfair prejudice. See *Olds*, 299 Ga. at 70 ("for evidence of other acts to be admitted under Rule 404 (b), the evidence must pass the test of OCGA § 24-4-403"). Such an assessment "must be done

on a case-by-case basis and requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense." (Citation and punctuation omitted.) *Kirby*, 304 Ga. at 481. "These circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic act and the charged offense, and the temporal remoteness of the other act." Id. Finally, "the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.'" (Citation omitted.) *Olds*, 299 Ga. at 70.

Here, the State had a high prosecutorial need for the other acts evidence, as the State needed to overcome Fleming's defense that he was merely present at the scene of the crime, to prove that he shared the same criminal intent as the unknown men, and, indeed, to show that he may have been the mastermind behind the assaults and resulting murder. See *Kirby*, 304 Ga. at 483 ("The high prosecutorial need for the [other acts] evidence . . . greatly increases its probative value."); *Olds*, 299 Ga. at 75-76 ("Probative value also depends on the marginal worth of the evidence — how much it adds, in other

words, to the other proof available to establish the fact for which it is offered."). The significant similarities between the incidents — the number of assailants involved, the communication through Bloods hand gestures and signals, the fact that Fleming immediately departed from the scene of the assaults just before they began, and the retaliatory nature of the attacks — outweigh the dissimilarities — gun versus fists, and the setting of the attacks. See *Kirby*, 304 Ga. at 483 (4) (a) (i). Less than one year had passed between the crimes charged and the jail incident, making the other acts evidence "not so remote as to be lacking in evidentiary value." (Citation and punctuation omitted.) Id. at 484. Therefore, the jail incident has high probative value.[8] And while the jail attack evidence is

---

[8] This Court has cautioned that other acts evidence admitted for the purpose of proving the general intent of an assault may have low probative value and significant prejudicial effect, so Georgia courts should be especially careful when conducting the Rule 403 balancing test. See *Jackson v. State*, 306 Ga. ___ (2) (b) (ii) (__SE2d__) (2019). See also *Kirby*, 304 Ga. at 486 (4) (a) (ii); *Brown v. State*, 303 Ga. 158 (2) (810 SE2d 145) (2018); *Parks*, 300 Ga. at 307. Here, however, Fleming was a high-ranking member of a gang, and he conspired with numerous actors in order to commit a premeditated and violent assault. Cf. *Olds*, 299 Ga. at 76 ("Generally speaking, in conspiracy cases, quality evidence of other acts that tends to prove criminal intent ordinarily will have substantial probative value, both because intent often is disputed in such

prejudicial, the incident was not a "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016). Instead, this evidence allowed the State to rebut Fleming's defense of mere presence and establish Fleming's intent as a co-conspirator and ringleader in the present case. Based on the foregoing, the probative value of the evidence outweighed any prejudicial effect, and the trial court did not abuse its discretion by admitting the jail incident into evidence at trial via Rule 404 (b).

4. Fleming contends the trial court abused its discretion when it restricted the cross-examination of Detective Tappan regarding the contents of Skrine's text messages. During trial, Detective Tappan testified that, after the shooting, he examined Skrine's cell phone. He noticed that Skrine had exchanged calls and text

---

cases, and because the prosecution frequently will find itself without other strong proof of intent.").

messages with numerous people on the day of the shooting, leading the detective to believe that Skrine was involved in selling drugs. On cross-examination, defense counsel attempted to have the detective opine whether, "based on [his] training and experience," these messages established that Skrine had "sold someone bad drugs." The State objected to the line of questioning; in response, defense counsel informed the trial court that he was trying to establish that someone other than Fleming had a motive to shoot the victims. The trial court ruled that the contents of the messages were "irrelevant, hearsay."

On appeal, Fleming contends that the trial court improperly curtailed his cross-examination, violating his right to confrontation and denying him due process. Assuming, without deciding, that the trial court's ruling was error, because defense counsel had elicited testimony on these very topics from Skrine earlier in the trial, any error was ultimately harmless. See *Moore v. State*, 251 Ga. 499 (2) (a) (307 SE2d 476) (1983) (any trial court error in curtailing cross-

examination rendered harmless where the questions that were disallowed were later posed to and answered by another witness).

5. Fleming raises five claims of ineffective assistance of counsel. As explained more fully below, none of these claims have merit.

> In order to succeed on his claim of ineffective assistance, [the defendant] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (734 SE2d 876) (2012). Furthermore, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have

chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (766 SE2d 45) (2014). Fleming has failed to make the requisite showings.

(a) Fleming contends that trial counsel rendered ineffective assistance by merely objecting to the State's improper argument in closing instead of asking the trial court to rebuke the prosecutor, requesting that the remarks be stricken from the record, requesting the trial court instruct the jury to disregard the remarks, placing a copy of the song's lyrics into the record for appellate review, and moving for a mistrial. Pursuant to our discussion in Division 2, we find no prejudice.

(b) Next, Fleming contends that trial counsel was ineffective for failing to take exception to the trial court's ruling restricting his cross-examination of Detective Tappan, for failing to request that copies of the text messages be placed into the record for appellate review, and for failing to move for a mistrial. However, counsel did object to the trial court's ruling, and even read the excluded text messages into the record, properly preserving this issue for

appellate review. Further, as discussed in Division 4, counsel cross-examined Skrine about the text messages and the implications of the same. Based on the foregoing, a motion for mistrial would have been unsuccessful, and counsel cannot be ineffective for failing to make a meritless motion. See *Bradshaw v. State*, 300 Ga. 1, 5 (792 SE2d 672) (2016); *Leonard v. State*, 292 Ga. 214, 217-218 (735 SE2d 767) (2012); *Lupoe v. State,* 284 Ga. 576, 580 (3) (f) (669 SE2d 133) (2008).

(c) In support of its motion to admit evidence of Fleming's gang affiliation, the State made a proffer at the pre-trial hearing that Archer would testify that, on the night of the shooting, he saw the three unknown men with red scarves in their back pockets. During trial, however, Archer denied making such a statement. The State then called a detective who had taken a recorded statement from Archer; the detective testified that Archer reported seeing the unknown men with red scarves in their back pockets.

Fleming contends that trial counsel was ineffective for failing to move for a mistrial based upon the State's failure to conform to

its prior proffer after Archer denied making the red scarves statement. Because the proffered evidence was ultimately introduced through another witness, a motion for mistrial based upon Archer's failure to testify as proffered would have been fruitless. See *Duvall v. State*, 290 Ga. 475 (2) (b) (722 SE2d 62) (2012) (trial counsel cannot be deficient for failing to lodge a meritless objection). Furthermore, defense counsel was able to use this inconsistent testimony to attack Archer's credibility at trial, and "[t]he manner in which an attorney attacks the credibility of a witness falls within the ambit of trial tactics." *Washington v. State*, 276 Ga. 655, 659 (581 SE2d 518) (2003). Accordingly, Fleming has failed to show that trial counsel acted deficiently.

(d) Fourth, Fleming argues that trial counsel was ineffective for failing to object and move for a mistrial when Archer testified about observing Bloods handshakes. Specifically, Fleming contends that Archer was not qualified as a gang expert and, thus, should not have been allowed to testify on the subject. We disagree.

"Georgia's new Evidence Code permits lay witness testimony in the form of opinions . . . that are rationally based on the witness's perception, helpful to a clear understanding of the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge." *Glenn v. State*, 302 Ga. 276, 279-280 (806 SE2d 564) (2017); OCGA § 24-7-701 (a). See also *Lupoe v. State*, 300 Ga. 233 (16) (794 SE2d 67) (2016) (trial counsel was not ineffective in failing to object to hearsay testimony relating to defendant's gang affiliation where another witness saw defendant using a special gang handshake). Here, Archer testified that he saw Fleming doing a handshake with the unknown men, which he knew to be a Bloods handshake based on his own prior knowledge. Because Archer's testimony was based on his first-hand knowledge, the proper foundation was laid and any objection would have been meritless. See *Duvall*, 290 Ga. at 475 (2) (b).

(e) Lastly, Fleming contends that counsel was ineffective for failing to move for a mistrial when the State tendered evidence of Fleming's gang affiliation. Here, counsel challenged the gang

evidence prior to trial and renewed his objection to the evidence prior to its admission at trial. The trial court overruled this objection and admitted the gang affiliation evidence. As discussed in Division 3 (a), the evidence of Fleming's gang affiliation was admissible. Defense counsel made numerous attempts to have the evidence excluded, all of which were overruled by the trial court. Thus, a motion for mistrial would have been fruitless. Accordingly, Fleming cannot show that trial counsel was deficient for failing to make such a meritless motion. See id.

*Judgment affirmed. All the Justices concur.*

Decided June 24, 2019.

Murder. DeKalb Superior Court. Before Judge Coursey.

*Bentley C. Adams III*, for appellant.

*Sherry Boston, District Attorney, Emily K. Richardson, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General,*

*Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.