308 Ga. 176
FINAL COPY

S19A1577.  EDWARDS v. THE STATE.

BOGGS, Justice.

Appellant Cornelius Edwards challenges his 2018 convictions for felony murder and other crimes in connection with an attempted armed robbery of Delvin Phillips and Marvin Goodman that resulted in the shooting death of Appellant's accomplice, Billy Favors. Appellant contends that the evidence was insufficient to support his convictions and that the trial court failed to fulfill its role as the so-called "thirteenth juror." He also asserts that the trial court abused its discretion in admitting a recording of a recording of a telephone call. Finally, he claims that the trial court committed reversible error in admitting other acts evidence. We affirm.[1]

---

[1] The crimes occurred on December 13, 2016. On June 30, 2017, a Fulton County grand jury indicted Appellant on three counts of felony murder, one count of attempted armed robbery of Phillips and Goodman, one count of aggravated assault with a deadly weapon against Phillips, one count of aggravated assault with a deadly weapon against Goodman, and one count each of possession of a firearm by a convicted felon and possession of a firearm

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the afternoon of December 13, 2016, Marvin Goodman asked his friend Delvin Phillips to pick him up and take him to Appellant's apartment on the west side of Atlanta, where Goodman was planning to buy an ounce or two of marijuana. Goodman knew Appellant because they were former co-workers. Goodman had been to Appellant's apartment at least half a dozen times; Phillips had been there only once with Goodman. Goodman brought more than $200 in cash for

during the commission of a crime. At a trial from May 14 to 18, 2018, the jury acquitted Appellant of possession of a firearm by a convicted felon and the associated felony murder charge but found him guilty of the remaining charges. On May 21, 2018, the trial court sentenced Appellant to serve life in prison for felony murder based on attempted armed robbery, concurrent terms of 20 years each for the two aggravated assaults, and a consecutive term of five years for possession of a firearm during the commission of a crime; the guilty verdict for felony murder based on the aggravated assault against Phillips was vacated by operation of law, see *Stewart v. State*, 299 Ga. 622, 627 (791 SE2d 61) (2016), and the court merged the guilty verdict for attempted armed robbery into the associated felony murder conviction. On May 22, 2018, Appellant filed a motion for new trial, which he amended with new counsel on March 4, 2019. On May 16, 2019, the trial court held an evidentiary hearing, and on June 24, 2019, the court denied Appellant's motion for new trial. Appellant then filed a timely notice of appeal, and the case was docketed in this Court to the August 2019 term and submitted for decision on the briefs.

the marijuana. As soon as Phillips picked up Goodman, Goodman called Appellant and said that they were on their way.

Shortly before the shooting, Shamika Nix, one of Appellant's neighbors, overheard Appellant tell someone on the phone that he was going to "rob them country n\*\*gers," and that it was "going to be easy." Appellant then went to the apartment directly above his and spoke to John Sutton, who was in the process of moving out. As Appellant and Sutton were talking, Billy Favors, Appellant's best friend, walked up the back stairs to Sutton's apartment and knocked on the door. Sutton let Favors in, and Favors went into the bathroom. Appellant then asked to use Sutton's apartment for a minute or two, explaining that he had some "country n\*\*gers" coming over, and Sutton agreed to let Appellant use the apartment. As Sutton was walking out the front door of his apartment, Appellant said, "John, it ain't going to be nothing, ain't nobody going to get killed."

Phillips and Goodman soon arrived at Appellant's apartment complex. They got out of Phillips' car and walked towards

3

Appellant's first-floor apartment, but Appellant met them in the parking lot and instead led them up the front stairs and into Sutton's apartment. About ten seconds after Phillips closed the door behind them, Favors came out of the bathroom and pointed a gun at Phillips and Goodman. Goodman put up his hands and started to say, "Whoa, whoa, whoa," but before he got out the third "whoa," Favors opened fire on Phillips. Goodman dove into the kitchen as Phillips, who had been a cavalry scout in the Army, tried to dodge the gunfire. The first shot only grazed Phillips' head, but the second shot struck him near the center of his chest and came out his back, and Phillips fell to the floor. Favors continued shooting at Phillips, who rolled around on the floor to avoid being shot again. Phillips managed to get up, pull out his pistol, and return fire at Favors, emptying his magazine. One shot struck Favors in the right side of his chest, passing through his heart and left lung before coming out his left side. Favors fell facedown on the floor and later was pronounced dead.

When the shooting stopped, Goodman ran out the back door, down the stairs, and into the street. Phillips ran out the front door but slipped at the top of the stairs and slid all the way down. Fueled by adrenaline, Phillips got up again, ran to his car, and drove out of the apartment complex, stopping only to pick up Goodman in the street. Appellant ran out the front door of Sutton's apartment, yelling that someone shot his "partner."

Phillips made it about a mile from Appellant's apartment complex before passing out and crashing into a telephone pole. Goodman then called 911. Phillips was taken to the hospital, where he underwent surgery. Phillips survived and, several days later, was released from the hospital.

When Favors' mother heard about the shooting, she went to Appellant's apartment complex, where she spoke to responding officers, including Detective Howard Griffin of the Atlanta Police Department. As Favors' mother was talking to Detective Griffin, Appellant came up to them. Appellant said that Favors told him shortly before the shooting that Favors was "planning to meet two

guys for a play" and asked to use Appellant's apartment, but Appellant said no, because his family was in his apartment, and suggested that Favors use Sutton's apartment instead. According to Appellant, he then went into his apartment to check on his family, and Favors went upstairs. Appellant said that he soon heard gunshots, ran upstairs to check on Favors, and found him lying in a pool of blood in Sutton's apartment.

Within days of the shooting, Appellant called Travis Ridley — Favors' cousin — and described what happened inside Sutton's apartment when Favors was shot. Ridley used his cell phone to record Appellant's call. Five days after the shooting, on December 18, 2016, Detective Griffin spoke with members of Favors' family, including Ridley, who played part of his recording of Appellant's call. Detective Griffin used a recording device concealed in his front pocket to record his December 18 interactions with Favors' family, including the recording of Appellant's call played by Ridley.

On December 19, 2016, Detective Griffin interviewed Sutton at Sutton's new home, and on January 2, 2017, Detective Griffin met

Appellant at a fast food restaurant to discuss the case. Detective Griffin used the recording device in his front pocket to record his December 19 interview with Sutton and his January 2 discussion with Appellant.

At trial, Goodman testified, stating among other things that about two weeks after the shooting, Appellant called him from an unknown number, "pleading [Appellant's] case that it wasn't his fault and it wasn't supposed to happen like that." Phillips, Nix, and Sutton also testified at Appellant's trial, as did Detective Griffin and the medical examiner who performed the autopsy on Favors. Detective Griffin's recording of Ridley's recording of Appellant's call was admitted into evidence and played for the jury, as were Detective Griffin's recordings of his December 19 interview with Sutton and his January 2 discussion with Appellant. The State also introduced, as other acts evidence of Appellant's intent, testimony from three witnesses regarding Appellant's involvement in two armed robberies that led to his entry of guilty pleas in 2009 to reduced charges of two counts of theft by taking.

At trial, Appellant's defense theory was that the police rushed to judgment and conducted a shoddy investigation, and that the State's case was built on lies told by people to protect themselves from potential criminal charges. Appellant did not testify. He called one witness, Orlando Hammond, who lived at Appellant's apartment complex. Hammond testified that about two minutes before the shooting, he saw two men get out of a car and walk up the front stairs to Sutton's apartment. According to Hammond, Appellant was not outside when the two men got out of the car and was not with them when they walked up the front stairs to Sutton's apartment. On cross-examination, Hammond acknowledged that he had recently been convicted of aggravated assault against his daughter.

(b) Appellant claims that the evidence was legally insufficient to support his convictions. However, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319

8

(99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining parties to a crime); *State v. Jackson*, 287 Ga. 646, 653 (697 SE2d 757) (2010) (holding that defendant may be found guilty of felony murder of his accomplice if that result was reasonably foreseeable consequence of their crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

(c) Appellant also claims that the trial court erred in failing to exercise its discretion as the thirteenth juror in reviewing his motion for new trial under the "general grounds," which are set out in OCGA §§ 5-5-20 and 5-5-21.[2] "In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any

---

[2] OCGA § 5-5-20 says: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-21 says: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *White v. State*, 293 Ga. 523, 524 (753 SE2d 115) (2013).

Appellant invoked the general grounds in his motion for new trial, and he cited OCGA §§ 5-5-20 and 5-5-21 and *White* both in his amended new trial motion and at the hearing on the motion. In its order denying Appellant's motion, the trial court referred to the paragraphs of the amended new trial motion containing those citations and then said:

> The evidence is not close or unsatisfactory and the verdict is not contrary to the evidence, nor decidedly and strongly against the weight of the evidence; nor contrary to the principles of justice and equity. Having considered the credibility of the witnesses and the weight of the other evidence, the Court approves the verdicts and in exercising its discretion as the "thirteenth juror," determines and holds that this is not a proper case for a new trial on the discretionary grounds.

Contrary to Appellant's claim, the record shows clearly that the trial court exercised its discretion under OCGA §§ 5-5-20 and 5-5-21 in denying him a new trial. See *Burney v. State*, 299 Ga. 813, 815 (792 SE2d 354) (2016). See also *Price v. State*, 305 Ga. 608, 613 (825

SE2d 178) (2019) (explaining that unless record shows otherwise, this Court presumes trial court properly exercised its discretion as thirteenth juror). Moreover, to the extent that Appellant is challenging the *merits* of the trial court's decision not to exercise its discretion to grant him a new trial, we have repeatedly explained that "this Court does not sit as an arbiter of the general grounds, which are 'solely within the discretion of the trial court.'" *Wilson v. State*, 302 Ga. 106, 109 (805 SE2d 98) (2017) (citation omitted). Accordingly, this claim fails. See *Strother v. State*, 305 Ga. 838, 842-843 (828 SE2d 327) (2019).

2. Appellant contends that the trial court abused its discretion in admitting Detective Griffin's recording of Ridley's recording of Appellant's call. We see no error.

Ridley died in an unrelated incident before Appellant's trial, and Ridley's recording of Appellant's call could not be located. Appellant filed a motion to exclude Detective Griffin's recording on multiple grounds, and the trial court held a hearing and orally denied Appellant's motion. Before Detective Griffin's recording was

admitted into evidence and played for the jury, the court gave the

following limiting instruction:

> You all are about to hear a recording, and before you can consider the content of that recording, it must be authenticated by evidence sufficient to support a finding that it is what the State contends it is: a recording of a conversation between two or more persons, one of whom is the accused. There are people talking over that conversation, and there is at least one other party to the conversation. You are not to consider any portion of the recording other than that properly identified as being the voice of the accused for the truth of the matter asserted or as evidence of guilt of the accused.

First, Appellant's voice on the recording was properly

authenticated. OCGA § 24-9-901 (a) says: "The requirement of

authentication or identification as a condition precedent to

admissibility shall be satisfied by evidence sufficient to support a

finding that the matter in question is what its proponent claims."

OCGA § 24-9-901 (b) (5) then says:

> By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Code section: . . . Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing

the voice at any time under circumstances connecting it with the alleged speaker . . . .

At trial, Goodman and Detective Griffin both testified that they had listened to the recording that was played for the jury and that they recognized Appellant's voice on the recording. Goodman explained that he was familiar with Appellant's voice from working with him, and Detective Griffin said that he was familiar with Appellant's voice from in-person conversations with Appellant. This testimony was sufficient to authenticate Appellant's voice on the recording. See *Nicholson v. State*, 307 Ga. 466, 476 n.6 (837 SE2d 362) ("OCGA § 24-9-901 departs from the former Evidence Code and is nearly identical to Federal Rule of Evidence 901. Thus, we look to the federal appellate courts for guidance in interpreting OCGA § 24-9-901."); *United States v. Vitale*, 549 F2d 71, 73 (8th Cir. 1977) (holding that witness' testimony that he had spoken with defendant personally on two occasions and could identify her voice was sufficient to authenticate defendant's voice on telephone call).

Second, Appellant's hearsay objection to Detective Griffin's recording lacks merit. As Appellant notes, that recording captured, in addition to Ridley's recording of Appellant's call, statements made by Ridley and Favors' mother, who were talking over the recording as Ridley played it for Detective Griffin. But to constitute hearsay, statements must be "offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). The trial court explicitly instructed the jury *not* to consider any voice on the recording other than Appellant's "for the truth of the matter asserted" or as evidence of Appellant's guilt, and the statements by Ridley and Favors' mother were not especially incriminating. See *Elkins v. State*, 306 Ga. 351, 360 (830 SE2d 217) (2019) ("Qualified jurors under oath are presumed to follow the instructions of the trial court." (citation and punctuation omitted)). And Appellant's own statements were admissions by a party-opponent, which are not excludable as hearsay. See OCGA § 24-8-801 (d) (2) (A) ("Admissions by party-opponent. Admissions shall not be excluded by the hearsay rule. An

14

admission is a statement offered against a party which is . . . [t]he party's own statement . . . .").

Third, Appellant's argument that the admission of Detective Griffin's recording violated the "rule of completeness" expressed in OCGA §§ 24-1-106 and 24-8-822 also fails.[3] Appellant contends that Detective Griffin's recording was incomplete, as Ridley did not play his entire recording of Appellant's call for Detective Griffin. However, the rule of completeness "'does not make admissible parts of a statement that are irrelevant to . . . the parts of the statement introduced into evidence by the opposing party.'" *Thompson v. State*, 304 Ga. 146, 152 (816 SE2d 646) (2018) (citation and punctuation omitted). Appellant has not shown that any other parts of Ridley's

---

[3] OCGA § 24-1-106, which mirrors Federal Rule of Evidence 106, says: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement." In a related vein, OCGA § 24-8-822, which was carried over from the old Evidence Code, says: "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." See *Jackson v. State*, 301 Ga. 866, 869 n.3 (804 SE2d 367) (2017) (explaining derivation of OCGA §§ 24-1-106 and 24-8-822).

recording of Appellant's call still exist, much less that the other parts were relevant to the part that the jury heard.

Fourth, we cannot say that the trial court abused its discretion in rejecting Appellant's conclusory assertion that the probative value of the recording was substantially outweighed by the danger of unfair prejudice. See OCGA § 24-4-403 ("Rule 403").[4] Appellant's description to Ridley of what happened in Sutton's apartment when Favors was shot was highly probative, and although it may have cast Appellant in a prejudicial light, it was not an *unfairly* prejudicial light. See *Bannister v. State*, 306 Ga. 289, 300 (830 SE2d 79) (2019). See also *Anglin v. State*, 302 Ga. 333, 337 (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is inherently prejudicial . . . ."). And as we have said before, the exclusion of evidence under Rule 403 "is an extraordinary remedy which should

---

[4] OCGA § 24-4-403 says: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

16

be used only sparingly." *Hood v. State*, 299 Ga. 95, 102 (786 SE2d 648) (2016) (citation and punctuation omitted).

3.    Finally, Appellant contends that the trial court erred in admitting the other acts evidence of his involvement in two armed robberies that led to his entry of guilty pleas in 2009 to reduced charges of two counts of theft by taking. See OCGA § 24-4-404 (b) ("Rule 404 (b)") ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of . . . intent . . . ."). Evidence is admissible under Rule 404 (b) only if: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act. See *Brewner v. State*, 302 Ga. 6, 13 (804 SE2d 94) (2017). See also *Hood*, 299 Ga. at 101-105 (discussing proper application of this three-part

test). We review a trial court's decision to admit other acts evidence only for abuse of discretion. See id. at 100-101.

We need not decide whether the trial court abused its discretion in admitting the other acts evidence, because any such evidentiary error was harmless. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."). "In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Peoples v. State*, 295 Ga. 44, 55 (757 SE2d 646) (2014) (citation and punctuation omitted). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Id. (citation and punctuation omitted)).

As discussed above in Division 1 (a), the evidence of Appellant's guilt aside from the other acts evidence was strong. See *Davis v. State*, 301 Ga. 397, 400 (801 SE2d 897) (2017) (pretermitting

18

question of error in admission of other acts evidence where strong evidence of guilt made any such error harmless). Moreover, both before the State presented the other acts evidence and again during the jury charge, the trial court instructed the jury that it could consider the other acts evidence only for the limited purpose of showing Appellant's intent and not for any other purpose, and that Appellant was on trial only for the offenses charged in this case and not for any other act. See *Howell v. State*, 308 Ga. ___, ___ (3) (___ SE2d ___) (2020) ("[T]he trial court gave a limiting instruction to the jury, which cured any possible unfair prejudice posed by the 404 (b) evidence." (citation and punctuation omitted)). In light of the strong independent evidence of Appellant's guilt and the trial court's thorough instructions limiting the jury's use of the other acts evidence, we conclude that it is highly probable that any error in the admission of the other acts evidence did not contribute to the guilty verdicts against Appellant.

*Judgment affirmed. All the Justices concur.*

19

DECIDED FEBRUARY 28, 2020.

Murder. Fulton Superior Court. Before Judge Whitaker.

*Kenneth W. Sheppard*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.