309 Ga. 219
FINAL COPY

S20A0088.  FRAZIER v. THE STATE.

McMILLIAN, Justice.

Appellant Damon LeShane Frazier was convicted of malice murder and related offenses arising out of the shooting death of Corey Damond Echols.[1] On appeal, Frazier contends that the

---

[1] Echols was killed on April 29, 2015. In September 2015, a Fulton County grand jury indicted Frazier for malice murder, felony murder predicated on aggravated assault with a deadly weapon, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, fleeing or attempting to elude, and possession of a firearm by a convicted felon. Frazier was reindicted in December 2015 on the same charges except the charges of felony murder predicated on possession of a firearm by a convicted felon and possession of a firearm by a convicted felon. Instead, the new indictment charged felony murder predicated on possession of a firearm by a first offender probationer and possession of a firearm by a first offender probationer.

At a trial conducted from January 11 to 15, 2016, a jury found Frazier guilty on all counts. On January 26, 2016, the trial court sentenced Frazier to serve life in prison without the possibility of parole for malice murder, a consecutive five-year term in prison for possession of a firearm during the commission of a felony, a consecutive five-year term in prison for fleeing or attempting to elude, and a consecutive five-year term in prison for possession of a firearm by a first offender probationer, for a total sentence of life in prison without the possibility of parole plus 15 years. The felony murder convictions were vacated by operation of law, and the aggravated assault charge merged into the count of malice murder.

Frazier filed a timely motion for new trial in January 2016, which he later amended through new counsel in June and July 2018. Following a July

evidence against him was insufficient, that the trial court erred by allowing the State to present evidence under OCGA § 24-4-404 (b), and that trial counsel was ineffective for failing to request a charge on a justification defense. Finding no error, we affirm.

1. Construing the evidence in the light most favorable to the verdict, the record shows that on the evening of April 29, 2015, Echols was sitting in his car on Kipling Street in the Thomasville Heights community in Atlanta. Echols had just finished a telephone conversation with his wife when a white Ford Crown Victoria with darkly tinted windows[2] and black wheels approached from the opposite direction and pulled alongside Echols' car. Numerous shots were fired from the driver's side of the car, which then sped away.

Echols was found slumped over inside his car and appeared to be bleeding from his head. He was transferred to a hospital where

---

2018 hearing, the trial court denied Frazier's motion as amended on August 13, 2018. Frazier subsequently filed a timely notice of appeal to this Court. Because there were delays in completing the appellate record, this case was docketed in this Court to the term beginning in December 2019 and thereafter submitted for a decision on the briefs.

[2] Surveillance video from a MARTA bus showed a white Crown Victoria with tinted windows in the Kipling Street area around the time of the shooting.

he eventually died of a gunshot wound to the head. Echols was later found to have sustained other wounds consistent with a bullet traveling through a car window before hitting him. His car had multiple bullet holes, including a hole in the front window on the driver's side, and a bullet jacket[3] was later found inside the doorframe of Echols' car after a police investigator "took the vehicle apart."

When police arrived on the scene, witnesses provided a description of the car, although they were not able to identify the shooter. The car's description was relayed over the police radio. Minutes later, an officer in a marked patrol car near the crime scene spotted a car matching the radioed description of the Crown Victoria and attempted to initiate a traffic stop. The driver sped away, leading police on a high-speed chase, reaching speeds up to 100 mph,

---

[3] This item was referred to by the police investigator as a "9mm projectile" and by the firearms examiner as "a .38 metal jacketed bullet." The firearms examiner explained that because the item was so damaged, she could not determine the type of firearm used to fire it; however, she noted that "[a] 9mm is part of the .38 class," so it was possible that the item recovered was actually a 9mm.

and eventually evading the pursuit. Shortly thereafter, a white Crown Victoria with darkly tinted windows and black wheels was reported wrecked and abandoned in a wooded area behind a house near where police lost sight of the car during the chase. A witness who reported the crash to police observed a man in a yellow shirt running from the car.

An initial search of the abandoned Crown Victoria found an SKS rifle and a Daisy BB gun. A subsequent search pursuant to a warrant located three 9mm shell casings, seven .223-caliber shell casings, a wig, and numerous items linked to Frazier, including a tequila bottle with Frazier's fingerprints and DNA on it and a Walmart receipt.[4] While attempting, through the use of police canines, to track the man seen fleeing the car, officers discovered a discarded Bushmaster rifle. Frazier's fingerprints were found on the

---

[4] The State presented evidence showing, and Frazier admitted at trial, that after picking up the Crown Victoria with the dark tinted windows from his girlfriend Catherine Johnson, Frazier then went to a Walmart and attempted to return stolen merchandise. When the loss control officer for the store attempted to detain Frazier, Frazier fled, got into the white Crown Victoria, and escaped.

rifle, and it was later determined that six of the seven .223-caliber shell casings discovered in the Crown Victoria had been ejected from that firearm, showing that the Bushmaster rifle had been fired at least six times and raising an inference that it had been fired from inside the car. Bullet fragments taken from Echols' skull were so damaged that the firearms examiner could not conclude whether the fragments had been fired from the Bushmaster rifle, although the examiner was able to determine that they could not have come from the SKS rifle[5] or from the same firearm as the bullet jacket found in Echols' car.

Cellular-tower records admitted at trial showed that a cell phone Frazier was using (under an alias) was in the area where Echols was shot at the time of the shooting and then "pinged" other towers along the route of the high-speed chase. Law enforcement also learned that the white Crown Victoria had been rented by a third party for Catherine Johnson, Frazier's girlfriend and the

---

[5] The ballistics expert found no evidence that the SKS rifle had been fired.

mother of his child, and that she had loaned him the car on the day of the murder.

Johnson testified at trial that she met Frazier earlier on the day of the shooting to exchange cars, giving him the white Crown Victoria with the darkly tinted windows and taking the car Frazier was driving, a white Crown Victoria with clear windows. Frazier was wearing a gold or yellow shirt at the time he borrowed the car. Later that evening, Johnson received a call from Frazier asking her to come get him. When she picked him up, he was bleeding and carrying a yellow shirt. Johnson testified that, when she asked what had happened, Frazier reported that a gun sale had gone wrong, that he had been pistol-whipped, and that the rental car had been stolen.

After Frazier was arrested in connection with Echols' shooting in June 2015, he made several statements to police. He first denied that he was ever in the Crown Victoria that was seen at the crime scene and later abandoned, but when he realized that police knew Johnson had rented it, he told them he may have been in the car.

Frazier also denied that he had ever touched the Bushmaster rifle.

At trial, Frazier testified in his own defense. He told the jury that around the time of the murder, he was in the area of the shooting in the Crown Victoria with tinted windows for a planned meeting to sell the Bushmaster rifle, which Frazier admitted belonged to him and he had placed in the car. Frazier stated that when he arrived at the sale location, he was carjacked by two masked men, one who got in the front passenger seat and another man who sat behind the driver's seat. They forced him at gunpoint to drive to Kipling Street, where they told him to roll down his window, and one or both of the carjackers shot at a black car through the driver's window, but Frazier did not see what happened because he ducked down as soon as he heard the gunshots. Frazier explained that he fled at the instruction of the carjackers and drove until he wrecked the car. At that point, the two masked men took off running, as did Frazier, who ran through the wooded area to a nearby flea market where he called Johnson to pick him up.

The State presented evidence that, in 1998, Frazier was

charged with homicide in connection with a 1997 shooting death in the same area of Atlanta. Frazier admitted that he shot the victim in that case, Corey Lundy, and later pleaded guilty to voluntary manslaughter, although he asserted the shooting was in self-defense. Frazier also admitted that he was on first-offender probation at the time Echols was shot and he was not legally permitted to have any firearms.

Frazier asserts that the evidence was insufficient to support any of his convictions, except the charge of possession of a firearm by a first-offender probationer,[6] because the State's case was entirely circumstantial and the proved facts did not exclude every other reasonable hypothesis except his guilt. He notes that none of the other witnesses could identify the shooter and that as the only witness inside the car, his testimony that he had been carjacked by two masked men, one of whom was the shooter, presented a reasonable hypothesis not excluded by the evidence.

---

[6] Frazier does not argue that the evidence was insufficient to support this conviction. However, consistent with our customary practice in murder cases, we will also review the sufficiency of the evidence for that charge.

In considering the sufficiency of the evidence as a matter of due process, we consider whether the evidence presented at trial, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Smith v. State*, 308 Ga. 81, 84 (1) (839 SE2d 630) (2020).

As an initial matter, this was not a purely circumstantial case as to the charge of possession of a firearm by a first-offender probationer because Frazier admitted at trial that he was in the vicinity of where Echols was shot to sell the Bushmaster rifle, which he had placed in the car, and possession of the rifle is a "main fact" of the charge. See *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017) (admission that defendant was a party to the attempted robbery that resulted in the victim's death was not a "mere

incriminating admission but a confession" that is direct evidence of his guilt (citation and punctuation omitted)); *Merritt v. State*, 292 Ga. 327, 329 (1) (737 SE2d 673) (2013) (because defendant admitted "main fact" of the crime of which he was convicted, this was not a purely circumstantial case). Because the State produced evidence from which the jury could find that Frazier was a first-offender probationer at the time of his offense and Frazier also admitted that he was on probation, we conclude that the evidence was sufficient to support this conviction.

As to the remaining charges, we conclude that the evidence at trial was sufficient to support his convictions even if the State's case is considered wholly circumstantial. "[T]he fact that the evidence of guilt was circumstantial does not render it insufficient." *Carter v. State*, 305 Ga. 863, 867 (2) (828 SE2d 317) (2019) (citation and punctuation omitted). Rather, under OCGA § 24-14-6,

> in order to convict [Frazier] of the crimes based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of his guilt and exclude every reasonable hypothesis save that of his guilt. Not every hypothesis is reasonable, and the evidence does not

have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable.

*Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019) (citation and punctuation omitted). The determination of "[w]hether an alternative hypothesis raised by the defendant is 'reasonable' is a question committed principally to the jury[.]" *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019). And "when the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law." *Cochran*, 305 Ga. at 829 (1) (citation and punctuation omitted).

The evidence showed that on the morning of the shooting, Frazier traded his Crown Victoria with non-tinted windows for his girlfriend's Crown Victoria with tinted windows and that he placed the Bushmaster rifle in the car. He admitted at trial that he was in the driver's seat of the Crown Victoria with the tinted windows on Kipling Street when shots were fired from the driver's side window,

killing Echols. He also admitted that a short time later, he fled from police when they attempted to stop the Crown Victoria and that he drove until he crashed the car in a wooded area. Frazier then fled the scene of the crash through the wooded area, and police found the Bushmaster rifle from which Frazier's fingerprints were lifted discarded in the wooded area near the car. The Bushmaster rifle was the only weapon found in or around the Crown Victoria that could not be excluded as the weapon that fired the fatal shot at Echols. Six spent casings from that weapon were found in the Crown Victoria, indicating that the gun had been fired at least six times. Other evidence, including his fingerprints and DNA, placed Frazier in the vehicle. Although Frazier denied shooting Echols and testified that he was at the crime scene and fled the police only because two unidentified, armed, masked men carjacked him and forced him to do so, it was up to the jury to assess the credibility of his testimony and to determine the reasonableness of this alternative hypothesis offered by the defense.

We conclude that the evidence at trial authorized the jury to

determine that the proved facts were not only consistent with Frazier's guilt but also that they excluded every other reasonable hypothesis as to whether Frazier committed the crimes for which he was convicted and sentenced.[7] Therefore, the evidence at trial was sufficient to support Frazier's convictions as a matter of due process and under OCGA § 24-14-6. See *Sullivan v. State*, __ Ga. __ (1) (a) (843 SE2d 411) (2020); *Frazier v. State*, 308 Ga. 450, 454 (2) (b) (841 SE2d 692) (2020); *Cochran*, 305 Ga. at 830 (1).

2. Frazier next contends that the trial court erred in admitting evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") that Frazier pleaded guilty to the voluntary manslaughter of Corey Lundy in 1997. Following a hearing,[8] the trial court admitted the Rule 404 (b)

---

[7] Because we have determined that the evidence was sufficient to affirm Frazier's conviction for malice murder, his claims that the evidence was insufficient to support his convictions for felony murder and aggravated assault are moot because the felony murder counts were vacated by operation of law and the aggravated assault charge merged into the malice murder conviction for sentencing. See *Chavez v. State*, 307 Ga. 804, 806 (1) n.3 (837 SE2d 766) (2020); *Blackledge v. State*, 299 Ga. 385, 387 (1) n.3 (788 SE2d 353) (2016); *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010).

[8] The State contends that the record does not show that Frazier objected to the admission of the Rule 404 (b) evidence and that this Court should review

evidence for the purposes of showing intent, plan, and preparation.

On appeal, we review a trial court's decision to admit evidence pursuant to OCGA § 24-4-404 (b) for a clear abuse of discretion. See *Brannon v. State*, 298 Ga. 601, 606 (4) (783 SE2d 642) (2016).

> Evidence is admissible under Rule 404 (b) only if: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Edwards v. State*, 308 Ga. 176, 183 (3) (839 SE2d 599) (2020).

At trial, the State presented testimony from a former Atlanta Police Department homicide detective who interrogated Frazier in connection with Lundy's shooting death. He testified that Lundy was shot at a liquor store in the Thomasville Heights area of Atlanta, the same area where Echols' murder occurred, and evidence

---

this enumeration only for plain error. However, Frazier clearly objected to the admission of the Rule 404 (b) evidence at the pretrial hearing and the trial court ruled it admissible. The transcript of this hearing was provided in a supplemental record to this Court. See OCGA § 24-1-103 (a) (2) ("Once the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal.").

at the scene indicated that Lundy had been shot with a .45-caliber weapon. After the homicide detective obtained a warrant for Frazier's arrest for homicide, he interviewed Frazier, who told the detective that Frazier's sister drove Frazier to the liquor store where he saw Lundy, who had robbed Frazier earlier. Frazier said that Lundy had "a bulge," which Frazier took to be a firearm, so Frazier shot Lundy. Frazier testified at the trial in this case that he shot Lundy and fled the scene. Frazier said that he pleaded guilty to the lesser offense of voluntary manslaughter and was sentenced to 14 years, of which he served 12-and-a-half years in prison.

Turning first to whether the Rule 404 (b) evidence was properly admitted to show intent, we note that Frazier "put his intent at issue by pleading not guilty, and he did not take any affirmative steps to relieve the State of its burden to prove intent." *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (i) (829 SE2d 142) (2019). Therefore, "because a plea of not guilty puts the prosecution to its burden of proving every element of the crime — including intent — evidence of other acts that tends to make the requisite intent more or less probable to any

extent is relevant." *Fleming v. State*, 306 Ga. 240, 246 (3) (b) (830 SE2d 129) (2019) (citation and punctuation omitted). See also *Olds v. State*, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016) ("[E]vidence that an accused committed an intentional act generally is relevant to show . . . that the same defendant committed a similar act with the same sort of intent[.]").

Here, Frazier claims that the other acts evidence is irrelevant to intent because he was coerced by the masked carjackers to participate in the crimes. However, that defense squarely put at issue whether Frazier intended to participate in the shooting or whether he was coerced into doing so, and the State was required to prove malicious intent for the malice murder charge. See OCGA § 16-5-1 (a). Although Frazier pleaded guilty to voluntary manslaughter in the earlier case, the circumstances of the Lundy shooting would allow the jury in this case to conclude that Frazier had the malicious intent to kill Lundy, which is relevant to support that he had the malicious intent to kill Echols. Therefore, the trial court did not err in ruling the testimony regarding the 1997 shooting

incident to be relevant to the issue of intent in this case.[9] See *Gunn v. State*, 342 Ga. App. 615, 621 (804 SE2d 118) (2017) (where defendant's "participation in the earlier crime required the same intent as the charged crimes, the evidence of the earlier other act was relevant").

As to the second prong of the Rule 404 (b) test, the trial court expressly found under OCGA § 24-4-403 that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. This weighing "must be done on a case-by-case basis and requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense." *Fleming*, 306 Ga. at 247 (3) (b) (citation and punctuation omitted). "These circumstances include the prosecutorial need for the extrinsic evidence, the overall similarity between the extrinsic

---

[9] Under the circumstances of this case, because the Rule 404 (b) evidence was relevant to prove intent, we need not decide whether it was also relevant for purposes of showing plan and preparation, as the trial court determined. See *Naples v. State*, 308 Ga. 43, 52 (2) (e) n.9 (838 SE2d 780) (2020).

act and the charged offense, and the temporal remoteness of the other act." Id. (citation and punctuation omitted). Moreover, "[w]hen other act evidence is introduced to prove intent, . . . a lesser degree of similarity between the charged crime and the extrinsic evidence is required." *Kirby v. State*, 304 Ga. 472, 484 (4) (a) (i) (819 SE2d 468) (2018) (citation, punctuation and emphasis omitted). The application of the balancing test under Rule 403 "is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Olds*, 299 Ga. at 70 (2) (citation and punctuation omitted).

We see no abuse of discretion in the trial court's application of the balancing test in this case. Here, the State had a high prosecutorial need for the other acts evidence to counter Frazier's defense that he had been coerced into participating in the crimes. See *Fleming*, 306 Ga. at 248 (3) (b) (high prosecutorial need to overcome defense that defendant was merely present at scene of the crime). There were significant similarities between the 1997

shooting of Lundy and the 2015 shooting of Echols. Both incidents took place in the same community in Atlanta. In the 1997 incident, Frazier arrived at the crime scene in another's car, shot the victim in a public location, and fled. He was accused of similar conduct in this case, arriving in a car that belonged to someone else, shooting the victim on a public street, and then fleeing. See *United States v. Barnes*, 469 Fed. Appx. 733, 736 (11th Cir. 2012) (evidence of use of gun in prior robbery admissible to rebut defense that defendant was coerced by her abusive boyfriend to use a gun).[10] See also *Brannon*, 298 Ga. at 607 (4) (evidence of similar robbery and shooting properly admitted to show intent when defendant claimed that he was merely present and did not know that his friend intended to shoot the victim).

Even though the Lundy shooting took place almost 18 years

---

[10] OCGA §§ 24-4-403 and 24-4-404 (b), the evidentiary provisions at issue here, "largely track their counterparts in the Federal Rules of Evidence," and this Court looks "to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in construing and applying these provisions." *Kirby*, 304 Ga. at 480 (4) n.5. See also *Olds*, 299 Ga. at 69 (2).

before the Echols shooting, the prior act "[was] not so remote as to be lacking in evidentiary value." *Kirby*, 304 Ga. at 484 (4) (a) (i) (citation and punctuation omitted). Frazier testified that he was in prison 12-and-a-half years of that time, and "the prior crime need not be very recent, especially where a substantial portion of the gap in time occurred while the defendant was incarcerated." Id. (citation and punctuation omitted) (affirming admission of Rule 404 (b) evidence of act committed 11 years prior to crimes at issue on appeal). See also *McKinney v. State*, 307 Ga. 129, 137 (3) (b) (834 SE2d 741) (2019) (affirming admission of Rule 404 (b) evidence of act committed 15 years prior to crimes at issue on appeal).

Finally, the State met its burden to prove the third prong of the Rule 404 (b) test because Frazier pleaded guilty to voluntary manslaughter for shooting Lundy in 1997 and admitted at trial that he shot Lundy. Accordingly, we discern no abuse of discretion in the admission of the Rule 404 (b) evidence.

3. Frazier also contends that he received ineffective assistance of counsel because his trial attorney failed to ask for a charge to

support a justification defense and instead sought a charge to support a coercion defense.

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington,* 466 U.S. 668, 687-95 (104 SCt 2052, 80 LE2d 674) (1984); *Brewner v. State,* 302 Ga. 6, 15 (IV) (804 SE2d 94) (2017). To show that his counsel's performance was deficient, a defendant must show that his attorney "performed in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *DeLoach v. State,* 308 Ga. 283, 287 (2) (840 SE2d 396) (2020) (citation and punctuation omitted); see also *Strickland,* 466 U.S. at 687-88. In order to make this showing, the defendant must overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State,* 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). To overcome this presumption, the defendant "must show that no reasonable lawyer

would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (2) (787 SE2d 221) (2016). Therefore, "[r]easonable trial strategy and tactics do not amount to ineffective assistance of counsel." *DeLoach*, 308 Ga. at 287 (2) (citation and punctuation omitted).

To show the prejudice required by *Strickland*, the defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-34 (2) (690 SE2d 801) (2010).

Frazier's trial counsel requested the following charge related to coercion, which the trial court gave to the jury:

> A witness is not an accomplice if the participation by the witness in the criminal enterprise was due to coercion. There is no legal requirement of corroboration of a

witness whose participation was coerced. Whether or not any witness in the case was an accomplice is a question for you to determine from the evidence in the case.

Trial counsel testified at the hearing on the motion for new trial that Frazier's defense at trial was that Frazier was not a party to the crimes because he was being held at gunpoint. Trial counsel said that she probably thought at the time that coercion was the appropriate defense, and she did not know that it may not be a defense to the murder charges in this case.[11] In any event, trial counsel did not think that a justification defense was proper under the facts. The trial court agreed, finding in its order on Frazier's motion for new trial that the evidence did not warrant a charge on justification.

Under OCGA § 16-3-26, "[a] person is not guilty of a crime,

---

[11] Frazier was charged with malice murder, and OCGA § 16-3-26 expressly provides that coercion is not a defense to that crime. Frazier was also charged with two counts of felony murder. This Court has reserved the issue of whether coercion provides a defense to felony murder. See, e.g., *Burgess v. Hall*, 305 Ga. 633, 633 n.2 (827 SE2d 271) (2019), cert. denied, __ U.S. __ (140 SCt 234, 205 LE2d 128) (2019) (reserving the question); *Brooks v. State*, 305 Ga. 600, 605 (2) n.4 (826 SE2d 45) (2019) (same); *Kelly v. State*, 266 Ga. 709, 711 (2) (469 SE2d 653) (1996) (same).

except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." Although the statute expressly provides that coercion is not a defense to murder, Frazier was also charged with crimes other than murder, including aggravated assault and fleeing or attempting to elude. Coercion is a valid defense to those crimes. Thus, trial counsel's requested jury charge was appropriate. Moreover, Frazier has failed to show that the requested coercion charge was prejudicial to his defense because the jury was never instructed that coercion was not a valid defense to murder. Therefore, the charge given could only have served to support Frazier's defense that he was involved in the incident resulting in Echols' death because he was being held at gunpoint.

Nevertheless, Frazier asserts that with regard to the murder charges, trial counsel should have also requested a jury charge under OCGA § 16-3-20 (5), which provides: "The defense of justification can be claimed . . . [w]hen the person's conduct is

justified for any other reason under the laws of this state[.]" This theory of justification necessarily relies on principles of law found outside OCGA § 16-3-20, and Frazier's only stated basis for a justification defense was that he was coerced by the two masked gunmen to participate in the shooting of Echols. But a defense that Frazier was *justified* in participating in Echols' murder because he was under an immediate threat from the masked gunmen is identical to a defense that he was *coerced* into participating in the crime because he reasonably believed "that performing the act [was] the only way to prevent his imminent death or great bodily injury[.]" See *Allen v. State*, 296 Ga. 785, 791-92 (9) (770 SE2d 824) (2015) (determining that the "omnibus justification defense" under OCGA § 16-3-20 (6) was identical to the defense of coercion (citation and punctuation omitted)). Frazier has failed to show that an unspecified justification charge under OCGA § 16-3-20 (5) would have been more beneficial to him than the coercion charge given by the trial court. Thus, because Frazier has failed to show either that trial counsel was deficient in failing to request a justification charge

or a reasonable probability that the outcome of his trial would have been different if his counsel had made such a request, we conclude that Frazier's claim of ineffective assistance of counsel is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 29, 2020.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Stanley W. Schoolcraft III*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Mathew E. Plott, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.